**RICHARD J. BOESEN**
Attorney at Law
State Bar No. 056579
964 Fifth Avenue, Suite 335
San Diego, California 92101-6102
(619) 233-5121
email: rboesenlaw@gmail.com

Attorney for Defendant
Robert Jesus Gallon

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

**(Honorable Marilyn L. Huff)**

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 19-CR-0491-H |
| Plaintiff, | **DEFENDANT'S MOTION FOR DOWNWARD DEPARTURES AND SENTENCING MEMORANDUM** |
| vs. | |
| ROBERT JESUS GALLON, | DATE:  January 25, 2021 |
| Defendant. | TIME:  9:00 a.m. |

COMES NOW Defendant Robert Jesus Gallon, by and through his counsel, Richard J. Boesen, and pursuant to Local Criminal Rule No. 32.1 hereby submits the following Motion for Downward Departures and Sentencing Memorandum.

**I.   STATEMENT OF CASE**

In January 2019, co-defendant Cherish Burtson and Mr. Gallon were in a romantic relationship and living together in a hotel in Chula Vista, CA.  Both sold small quantities of heroin to support their drug addiction and pay for daily expenses.

On January 5, 2019, Burtson posted an advertisement on Craigslist for "Black Roofing Tar," in an attempt to attract clients.  The posting specifically included the number for Burtson – not that of Mr. Gallon.  Megan Hawkins ("M.H.") responded to

1  this advertisement and began to text with Burtson for the purchase of heroin. M.H., a
2  relapsed drug addict, and Burtson agreed to a transaction. Burtson and Mr. Gallon
3  drove together to meet M.H. and sold M.H. two grams of heroin. M.H., who had been
4  consuming alcohol and other drugs that day, then drove home, where she apparently
5  ingested the heroin in her car, and was found dead the next day.

6  The day after the sale, San Diego Police officers, in connection with the DEA,
7  used M.H.'s cell phone to arrange for a second transaction. Again, Burtson and
8  Gallon drove together to meet M.H. where they were arrested without incident and
9  charged with drug offenses in San Diego Superior Court. The state case was
10 dismissed due to the filing of this action, and Mr. Gallon was transferred from state
11 custody to federal custody.

12 A superseding information was filed on October 6, 2020, charging Mr. Gallon,
13 with conspiracy to distribute heroin, in violation of 21 U.S.C. §§841 and 846 (Count
14 One). Burtson was charged in Count Two with conspiracy to distribute heroin, in
15 violation of 21 U.S.C. §§841 and 846. Mr. Gallon plead guilty to Count One the same
16 day, pursuant to a plea agreement.

17 **II.   INDIVIDUAL BEFORE THE COURT**

18 Mr. Gallon was born in San Diego to Robert Gallon (Sr.) and Carmen Garcia.
19 When Mr. Gallon was a young child (age 2-3), his parents separated. Mr. Gallon
20 moved with his mother to Tepache, Sonora, Mexico. He was raised by his mother, but
21 as a single-mother spent much of her time out of the home in an attempt to provide for
22 her family.

23 Due to the family's poverty, education was not an option available to Mr.
24 Gallon. He completed the equivalent of one year of high school in Moctezuma,
25 Sonora, Mexico, but due to lack of financial resources could not continue his
26 education past age 15.

27 With a limited education, Mr. Gallon began working various construction jobs
28 in Mexico to help provide for himself and his family. He would also earn money by

washing cars and working in hotels in Mexico, but the compensation was nominal.

In approximately 2014, Mr. Gallon returned to San Diego, hopeful that he could make better money working construction in the U.S.  He gained employment with Michelangelo Enterprises (a licensed general and tile setting contractor).

Mr. Gallon has been addicted to narcotics since his early-twenties.  He became addicted to methamphetamines in Mexico, and voluntarily sought treatment at drug rehabilitation program in Mexico.  In 2018, he relapsed and began to use methamphetamines and heroin on a regular basis.  Mr. Gallon would certainly benefit from further drug rehabilitation programs and respectfully requests that this Court recommend he participate in the BOP's Residential Drug Abuse Program ("RDAP").

In San Diego, Mr. Gallon was able to reconnect with his father, which proved to be disastrous.  His father had become a drug addict also (convicted by this Court for importation of marijuana) and had become a dealer.  After his father's arrest, Mr. Gallon was asked to take over selling to his dad's clients while his father was in custody.  Out of a sense of family loyalty, Mr. Gallon agreed to do so – but had only done so for a short period of time prior to his arrest.  Although, Mr. Gallon was raised without a father-figure, his father directly contributed to and caused Mr. Gallon's participation in this offense.

While in Mexico, Mr. Gallon developed a relationship with Rosa Acuna, and together they have one child (age 5).  The child now resides with Mr. Gallon's sister in Mexico.  In San Diego, Mr. Gallon was in a relationship with co-defendant Burtson.  This relationship was not healthy for either as they jointly used and sold drugs to support their addictions.   Notably, Defendants used the same heroin that was sold, and specifically that which was sold to M.H. The heroin was not laced with fentanyl.

Upon his release from custody, Mr. Gallon will likely return to work in the construction industry either here or in Mexico.  As Mexico has been his home more than the U.S., he requests this Court allow him to live in Mexico upon release.  Alternatively, Mr. Gallon requests the Court recommend placement in a Residential

1  Reentry Center so as to permit him to find employment and housing, thus assisting in
2  transitioning into a productive member of society.

3  **III.    ADVISORY GUIDELINE CALCULATIONS & DEPARTURES**

4  It is well established following *Booker* and its progeny that the U.S. Sentencing
5  Commission Guidelines ("Guidelines") are now advisory and only one factor for the
6  district court judge to consider in sentencing a defendant. *United States v. Booker*, 543
7  U.S. 220 (2005); *Kimbrough v. United States*, 552 U.S. 85 (2007) (holding that a district
8  court has discretion to vary from the applicable guideline range as a policy matter). The
9  district court may not presume that the Guideline range is reasonable, but must "make
10 an individualized assessment based on the facts presented" and taking into account all
11 the 3553(a) factors. *Gall v. United States*, 552 U.S. 38, 50 (2007).

12      **A.    Base Offense Level & Specific Offense Characteristics**

13 Pursuant to the Plea Agreement, Mr. Gallon must recommend the Base Offense
14 Level stated herein, but is free to argue for further departures and variances.

15      1. <u>Base Offense Level</u>

16 The Plea Agreement mandates that Mr. Gallon recommend a Base Offense
17 Level of 38, per USSG §2D1.1(a)(2), which is applicable when "the offense of
18 conviction establishes that death or serious bodily injury resulted from the use of the
19 substance."

20 During the investigation into the death of M.H., San Diego Police interviewed
21 M.H's fiancé who told the police that they had spent the day drinking alcohol, and that
22 M.H. had said she was going to the grocery store. Although the fiancé was concerned
23 that M.H. did not return and attempted to text her, inexplicably no effort to look for
24 her was commenced that evening – even though M.H. was in the parking of lot of their
25 residence. M.H.'s fiancé also told SDPD that she was aware that M.H. had relapsed
26 about a month prior to this event. M.H.'s parents informed SDPD that M.H. had a
27 history of illicit drug use – her drug of choice was heroin – and chronic alcohol abuse.
28 The San Diego County Medical Examiner determined that the cause of M.H's

1  death was: "combined effects of heroin, ethanol, chlordiazepoxide, and mitragynine
2  (kratom) abuse." The Medical Examiner further determined the death was accidental.
3  M.H.'s fiancé confirmed they had been drinking together that day at their home, which
4  explains the high quantity of ethanol found in M.H.'s system. Additionally, M.H.'s
5  prescription for Xanax is a benzodiazepine, as is chlordiazepoxide.

6  The combination of several drugs – not just heroin – caused M.H.'s death. The
7  alcohol level in M.H's blood was 0.16% – double the legal limit. M.H. had also
8  separately consumed benzodiazepines. There is no indication that the heroin by itself
9  would have caused M.H.'s death. Rather the evidence is to the contrary as both
10 defendants had ingested the same "batch" of the heroin, clearly without lethal effects.

    2. Acceptance of Responsibility

12 The parties agree that Mr. Gallon should receive a 3-level departure for
13 Acceptance of Responsibility, per USSG § 3E1.1. Mr. Gallon has plead guilty and
14 therefore truthfully admitted his conduct in this offense. He Gallon was initially in
15 state custody and then transferred to federal custody. Thereafter, he did not seek
16 judicial intervention to resolve any motion – particularly during the COVID-19
17 pandemic and the judicial restrictions imposed as a result. Additionally, Mr. Gallon
18 waived his *Miranda* rights post-arrest and admitted his conduct.

    3. Expeditious Resolution

20 The parties also agree that Mr. Gallon should receive a further 3-level departure
21 as a variance for Expeditious Resolution. Despite the COVID-19 pandemic and the
22 Judicial Emergency in the district, Mr. Gallon plead guilty early in the proceedings.
23 As noted above, he did not argue any substantive motions.

    4. Minor Role

25 Section 3B1.2 of the Sentencing Guidelines provides for a minor role reduction
26 for a defendant that was "involved and who perform[ed] a limited function in the
27 criminal activity." (U.S.S.G. §3B1.2, App. Notes 3A.) A role reduction is fact
28 specific, and the court should consider: (1) degree to which the defendant understood

the scope and structure of the criminal activity; (2) degree to which defendant participated in planning or organizing; (3) degree to which defendant exercised decision-making authority; (4) nature and extent of defendant's participation in the criminal activity; and (5) degree to which defendant stood to benefit.

Mr. Gallon had some knowledge of the scope and structure of this conduct. However, he had "inherited" the operation from his father – it was not something he had built or a role he actively sought. He "inherited" as preexisting source of supply, and a few "customers." Apart from that, his knowledge was minimal, and he had not previously been engaged in such conduct. While he certainly participated in the offense, he was merely in an acting role until his father was released from custody.

To his credit, Mr. Gallon was not involved in the manufacturing or importation of any heroin or any drugs. He told arresting officers that he does not "cut" the heroin with any other substance – a fact confirmed by co-defendant Burtson. Mr. Gallon was not significantly benefitting from this venture. The sale proceeds paid for his and co-defendant Burtson's living expenses in a hotel in Chula Vista and nothing more.

Mr. Gallon was also involved in low-quantity sales. He admitted that he sold M.H. 2 grams; 8 grams was found in the defendants' hotel room (shared with Burtson), and three baggies with an additional 4.7 grams (gross weight) was found in the car. All indication are that the sales were small in quantity primarily for personal use.

In considering all of the factors and role, Mr. Gallon and Burtson were jointly participating in this offense. However, neither were involved in the more egregious conduct of manufacturing or importing controlled substances. Each were only participating in small-quantity sales to support their own addictions. Accordingly, Mr. Gallon respectfully requests this Court depart by 1-level in recognition of his limited role in this conspiracy involving those who manufacture and import the drugs.

**B.     Variances**

A district court may depart as a variance, pursuant to 18 U.S.C. § 3553(a)(1), based upon a lack of criminal history, even when the defendant is in a Criminal History Category I. *United States v. Autery*, 555 F.3d 864, 874 (9th Cir. 2009). On appellate review, the *Autery* court upheld the variance leaving it to the reasonable judgment of the district court to sentence the defendant so that he "could again become a productive, non-threatening member of free society." *Id*.

A variance based upon the lack of significant criminal history is comports with the spirit of an aberrant behavior departure outlined in USSG §5K2.20. Mr. Gallon has no prior criminal convictions or arrests. Mr. Gallon's involvement in this offense stems solely from a sense of an obligation to his father. He was merely stepping into those shoes, without any significant planning on his part. He was unaware of the greater scheme. This offense represents a deviation from his otherwise law-abiding life, notwithstanding his battle with addiction.

Based upon the lack of Mr. Gallon's criminal history, and other factors discussed herein below, this Court is well within its discretion to vary from the Sentencing Guidelines based upon his lack of a significant criminal history.

### C. Guideline Calculations

The advisory Guidelines are another factor for the Court to consider in fashioning a fair and reasonable sentence. Based upon Probation's calculation of Mr. Gallon's criminal history, and applying the jointly recommended variance the following Guideline Calculations are:

```
Base Offense Level (USSG § 2D1.1(a)(2)............................. 38
Acceptance of Responsibility (USSG § 3E1.1) ....................... -3
Variance / Expeditious Resolution (18 U.S.C. § 3553)............. -3
TOTAL ............................................................. 32
CHC ................................................................ I
Guideline Range............................................ 121-151 months
```

### IV. APPLICATION OF 18 U.S.C. 3553 FACTORS

Section 3553(a) mandates this Court to impose a sentence "*sufficient, but not greater than necessary*, to comply with the purposes set forth in paragraph (2)." Section 3553(a) (emphasis added).

Subsection (a)(1) of section 3553 mandates the Court consider the nature and circumstances of the offense and the history and characteristics of the defendant. Mr. Gallon acknowledges the tragic circumstances of this offense and sincerely regrets the loss of life, and the pain and suffering of those hurt by his conduct. Clearly, Mr. Gallon did not intend to cause anyone's death; nor did he reasonably believe that the consumption of the heroin – that he had personally ingested – would cause the death of M.H.

This conduct was out of character. Mr. Gallon had no prior experience in distributing drugs. Mr. Gallon lead a simple life of working in construction and was barely able to make ends meet. Simultaneously he was battling his own addiction. Due to his father's incarceration, he felt obligated to briefly fill his father's shoes. He returned to the U.S. to make a better life for himself and provide for his family – not to engage in this or any illegal conduct. In addition to the regret he feels for M.H. and her family and friends, he also regrets the pain that this will cause to his own family.

Section 3553(a)(2) requires the sentencing court to look at the "need for the sentence imposed." Subsection (A) speaks to a defendant reflecting upon the seriousness of the offense and a just punishment. As discussed above, Mr. Gallon acknowledges that his conduct was wrong, illegal, and had terrible consequences. At the young age of 30, Mr. Gallon will forever be subject to a felony conviction. This will undoubtedly hamper his future opportunities more than any prison sentence.

Probation acknowledges that a sentence "somewhat lower than [120 months] might be sufficient," but concludes that it is precluded from recommending a lower sentence due to the statutory mandatory minimum sentence. (PSR ¶99)

Subsection (B) provides that the sentence should be no more than necessary to provide adequate deterrence for future offenses. Mr. Gallon has no prior incarceration

history. The current term of imprisonment has been a shock to him, and has served a deterrent purpose. A lengthier sentence does not necessarily have a greater deterrent effect. As detailed in numerous treatises and publications, empirical research shows no relationship between higher sentences and greater deterrent effects. General deterrence is *not* advanced by severity; rather, it is the *certainty* of punishment that has a deterrent effect. Michael Tonry, *Purposes and Functions of Sentencing*, 34 Crime and Justice: A Review of Research 28-29 (2006).

Mr. Gallon's offense was not a violent crime. While the consequences were tragic, his role was merely to sell a controlled substance. He is not a violent individual. Rather, Mr. Gallon looked out for and took care of co-defendant Burtson during their relationship. He monitored her consumption of drugs to ensure that she would not overdose. He is therefore not a risk to the public. 18 U.S.C. § 3553(a)(2)(C).

## V. RESTITUTION

Pursuant to 18 U.S.C. § 3663, the district court has discretion to order the defendant to make restitution to any victim, or if the victim is deceased, to the victim's estate for offenses under the Controlled Substances Act. "The district court has discretion under this scheme to make such an order." *United States v. Oren*, 893 F.2d 1057, 1065 (9th Cir. 1990).

Section 3663 further states that the court in determining whether to order restitution "shall consider (I) the amount of the loss sustained by each victim as a result of the offense; and (II) the financial resources of the defendant, the financial needs and earning ability of the defendant and the defendant's dependents, and such other factors as the court deems appropriate." 18 U.S.C. § 3663(a)(1)(B)(i). The court may order that defendant "pay an amount equal to the cost of necessary funeral and related services." 18 U.S.C. § 3663(b)(3).

The Court should not impose an order of restitution. As stated in the PSR, the costs of funeral expenses were paid for by a GoFundMe account. (PSR ¶20) It is

unclear whether the estate incurred any costs of necessary funeral and related services, or the extent that the contributions of third parties paid for these expenses. The amount of loss has not been ascertained, and it is unknown if the identify of each individual donor could be ascertained so as to ensure restitution is made to each individual.

Furthermore, Mr. Gallon lacks, and will likely continue to lack, the financial resources and earning ability to satisfy any restitution order. Mr. Gallon was living in a hotel at the time of the offense – without steady income or a permanent residence. Probation determined that Mr. Gallon lacks the financial ability to pay a fine. (PSR ¶76). The same financial inability to pay remain, whether the court were to impose a fine or restitution.

Accordingly, Mr. Gallon respectfully requests that this Court not impose any order of restitution. To the extent the Court does impose an order of restitution, Mr. Gallon requests the Court make co-defendant Burtson jointly liable in accordance with 18 U.S.C. § 3664(h).

## VI. CUSTODY CREDITS

As mandated in 18 U.S.C. § 3585, a defendant "shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentences commences – (1) as a result of the offense for which the sentence was imposed… that has not been credit against another sentence."

Mr. Gallon was arrested for his offense and charged in state court on January 6, 2019. He was subsequently transferred to federal custody on January 25, 2021, and the state court proceedings were dismissed (see PSR p 1 "Release Status," and ¶14). As Mr. Gallon has been in custody as a result of this offense, and has not received credit for the time spent in state custody, he should receive custodial credit dating back to January 6, 2019.

Mr. Gallon respectfully requests the Judgment acknowledge this date and credit so as to avoid any confusion with the date he was taken into federal custody.

## VII. CONCLUSION

Considering all relevant information, Mr. Gallon respectfully requests that this following the jointly recommended Guideline calculations and variance, and impose a sentence less than 120 months.

Date: January 11, 2021

Respectfully submitted,

/s/ Richard J. Boesen
RICHARD J. BOESEN
Attorney for Defendant