1  RANDY S. GROSSMAN
2  Acting United States Attorney
   CARLOS ARGUELLO
3  Assistant U.S. Attorney
   CA Bar No. 157162
4  Office of the U.S. Attorney
5  880 Front Street, Room 6293
   San Diego, CA 92101
6  Tel: (619) 546-6684
7  Email: Carlos.Arguello2@usdoj.gov

8  Attorneys for the United States

9

10              **UNITED STATES DISTRICT COURT**

11            **SOUTHERN DISTRICT OF CALIFORNIA**

12

13  UNITED STATES OF AMERICA,              Case No.:  19-CR-0491-H
14                     Plaintiff,          Date:  May 3, 2021
15                                         Time: 9:00 a.m.
        v.
16                                         **UNITED STATES'**
17  ROBERT JESUS GALLON (1),               **SENTENCING MEMORANDUM**
18                     Defendant.
19

20      The United States of America, by and through its counsel, RANDY S. GROSSMAN,
21  Acting United States Attorney, and Carlos Arguello, Assistant U.S. Attorney, hereby files
22  its *Sentencing Memorandum.*
23  //
24  //
25  //
26  //
27  //
28

# I

## STATEMENT OF FACTS

### 1.   The Offense Conduct

The Court is familiar with the tragic facts of this case and those facts are detailed in the parties' plea agreement and the presentence report.   The following will serve as a summary of the events.  Between August 2018 and January 6, 2019, Defendant Gallon was a marijuana and then, heroin dealer selling primarily to a known client base in the Chula Vista area.[1]

To support their own addictions, Defendant acquired multi-ounce quantities of heroin and sold street-level quantities to individuals. At the time the hotel room at which he resided was searched by law enforcement, they located not only heroin but also approximately 30.8 grams (gross weight) of methamphetamine, a digital scale with heroin residue and a notebook of pay and owe information along with multiple cellular telephones. Defendant was an active heroin dealer.   Co-Defendant Burtson, assisted him. In fact, Defendant told agents that he had inherited his father's client base after his father's arrest.

Before January 5, 2019, in coordination with Defendant, Burtson posted on Instagram a coded advertisement purportedly promoting "Black Roofing Tar" that was intended to  surreptitiously attract heroin buyers.   This was a part of their collaborative effort to boost sales and to expand their client base.

On January 5, 2019, M.H., a 30-year old female from the Tierrasanta area of San Diego, responded to the advertisement and contacted the couple.   According to a friend who was with M.H. earlier that evening, M.H. had not used drugs for most of their four-year relationship but she had relapsed and again started to use heroin approximately one

---

[1] Defendant lived with his companion, co-Defendant Cherish Dorothea Burtson ("Burtson"), at a Chula Vista motel.  Both individuals had become heroin addicts a year or more before they committed the instant offense.  They lived day-to-day with one exclusive priority – to fill the need for heroin required by addiction.   Both individuals became unemployed as their dependence on heroin increased

1  month earlier.  During the initial contact, Defendants agreed to supply M.H. with one gram

2  of heroin for $70.00.  Later that evening, Burtson and M.H. discussed logistically how and

3  where to conduct the transaction.  Defendant and Burtson agreed to meet M.H. that same

4  evening in Tierrasanta.

5      Defendant and Burtson rode together to Tierrasanta.   While Defendant drove,

6  Burtson exchanged text messages with M.H. about the specific meeting spot.  Defendant

7  and Burtson eventually arrived and met M.H. near an A.T.M.   The parties negotiated

8  further, and M.H. purchased two grams of heroin for $100.00.

9      Shortly after the sale, M.H. drove away a short distance and parked in a vehicle space

10  near her condominium complex.  M.H. remained in the car and ingested the heroin.  M.H.

11  then overdosed and died in the car.   Defendant agrees that, beyond a reasonable doubt,

12  M.H.'s death was caused by the heroin he and Burtson sold to her.

13  **2.  <u>M.H. The Individual</u>**

14      M.H. was 30 years old when she died from the heroin overdose.  M.H. is survived

15  by her parents R.H. and KH; her older brother and sister; a large extended family; and, her

16  fiancé.

17      The death of M.H., the youngest of three children, has been an unimaginable and

18  staggering loss for her parents.  They have lived with unprecedented grief and sadness

19  which have left them devastated.  Her father has lived in a haze of depression, pain, anger,

20  confusion, and blame.

21      Growing up, M.H. spent her first five years living in Lakeside.  When she was five,

22  the family moved to Ramona.  During her youth, her family enjoyed taking camping,

23  desert, river and R.V. trips together.  M.H. did well in school.  She was also outgoing and

24  had many friends.

25      M.H. was known for her dedication and determination to excel.  She was regarded

26  as a fierce competitor in everything she did.   At age seven, she started playing soccer.

27  According to her family, she was a natural athlete.  After playing one year of recreational

28

organized soccer, M.H. chose to play with the more competitive club teams that frequently travelled across the country for tournaments.

M.H. was good enough to make one of San Diego County's most prestigious and competitive soccer teams, the San Diego Surf Soccer Club. M.H. was chosen to play for the California All-Stars and she competed on several championship teams for her age group.

M.H. eventually attended Ramona High School, where she made the varsity soccer team and varsity cheer squad as a freshman. Later, she transferred to Westview High School and continued playing varsity soccer and participating in cheer. She had many friends from her activities.

As a young adult, M.H. reached a professional career goal when she was hired by a mechanical engineering firm. The firm recognized her talent and enrolled her in AutoCad engineering classes at UCSD. M.H. exceled in her classes and ultimately received praise from her firm for applying what she learned to the firm's ongoing projects.

Coincidentally, while M.H. attended classes at UCSD, she met her future fiancé.

M.H.'s path to addiction was not an uncommon one. She was an athlete who played a sport for over ten years that took a heavy toll on her knees. M.H. had significant ligament damage to one of her knees that required long-term medical attention. The injury left M.H. with chronic pain and in need of ongoing medical treatment. To alleviate some of the discomfort, her doctors prescribed oxycodone. In subsequent appointments to help manage her pain, doctors continued to prescribe oxycodone.

The oxycodone had its addictive qualities from which M.H. was not immune. M.H. got herself into the grips of addiction that spiraled into a heroin addiction that changed her life. She was in a daily struggle to fight this addiction. M.H. succeeded in staying clean for at least several months at a time.

Unfortunately, shortly before her death, M.H. relapsed. M.H. discovered online that Defendant and his companion advertised their willingness to accommodate her needs.

They delivered.  They travelled from Chula Vista up to Escondido to meet her for the heroin transaction that would end her life.

## II

## THE SENTENCING GUIDELINES

In determining a sentence, courts must first consult the applicable sentencing guidelines.  The plea agreement sets forth the following agreed upon guidelines:

| | | | |
|---|---|---|---|
| 1. | Base Offense Level [USSG § 2D1.1(a)(2)] | | 38 |
| 2. | Acceptance of Responsibility [§ 3E1.1] | | -3 |
| 3. | Expeditious Resolution [Variance under § 3553(a)] | | -3 |
| | **Adjusted Offense Level:** | | **32** |

Defendant has no criminal history points and he is in a Criminal History Category I. At the corresponding adjusted offense level of 32, Defendant's guidelines calculations produce a range of 121-151 months' custody.  The minimum mandatory is 120-months.

## III

## THE § 3553(a) FACTORS

After consulting the applicable sentencing guidelines, courts must then turn to the factors found in 18 U.S.C. § 3553(a):

> **Factors to Be Considered in Imposing a Sentence.**—The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider—

**1.  The Nature and Circumstances of The Offense**

This offense is highly aggravated both because of the loss of life and because of the efforts undertaken by Defendant and his partner to deal deadly heroin despite his understanding of the associated risks witnessed by him first-hand through his own family experience. This case illustrates the far-reaching consequences that heroin has on lives – the loss of life; the anguish of the victim's surviving family and friends for their loss; the

loss of freedom suffered by defendants who distribute the drug; and the resulting consequences to society from the lives lost and addictions to this deadly narcotic.

Simply stated, the desire to make money to support the demanding and consuming lifestyle driven by heroin addiction resulted individual. M.H., needlessly dying as a result of Defendant's heroin dealing. While the evidence shows that the heroin was not tainted by fentanyl or other lethal mix, Defendant acknowledged that he sold the heroin without knowing that and cannot say he was unaware of the potential for overdose, and death, in dealing this heroin. Plainly, that is a risk that Defendant took when he proceeded down this path knowing that his father's drug dealing efforts had landed him in custody.

**2.  The History And Characteristics Of The Defendant**

Defendant has no criminal history but, he is already at a crossroads in his young life. Defendant was a street level drug dealer who ignored the warning signs and chose to proceed down the path of dealing deadly heroin. He has a limited education with concomitant limited job skills. In fact, Defendant left his job at a tile company so he could deal drugs. He acknowledges an addiction to methamphetamine and heroin. He has a five-year old child who lives with Defendant's sister.

**3.  The Need for The Sentence Imposed—**

> **(A)    to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;**
>
> **(B)    to afford adequate deterrence to criminal conduct;**
>
> **(C)    to protect the public from further crimes of the defendant;**
>
> **(D)    to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;**

Taken together, the above objectives are fully satisfied by the Government's recommended sentence. Such sentence is sufficient, but not greater than necessary, to comply with the purposes of § 3553(a). It is a just punishment that reflects the seriousness of the charged offense, promotes respect for the law, and provides just punishment. The

United States certainly would support imposition of the R.D.A.P. or a similar program if Defendant so desires.

The recommended sentence is, arguably, at the lower end of the range of similar sentences in these types of overdose resulting-in-death cases.   Still, the United States' recommended sentence considers and satisfies the need both for general and specific deterrence.  Of course, deterrence is important under 3553(a) as it can have an impact on any other individual who might think of engaging in similar conduct.  During his custodial term, the public will be protected from Defendant selling drugs.  Defendant will have an appropriate opportunity to reflect upon his actions and consider the loss of life that those actions caused.   Defendant will also have the opportunity to avail himself of the rehabilitative programs offered by the Bureau of Prisons.

## IV

## CONCLUSION

The United States respectfully urges the Court to sentence Defendant to the term it has recommended.

DATED:     April 29, 2021

Respectfully submitted,

RANDY S. GROSSMAN
Acting United States Attorney

_s/ *Carlos Arguello*_
Carlos Arguello
Assistant U.S. Attorney